**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 20-cr-292-WJM

UNITED STATES OF AMERICA,

　　　Plaintiff,

v.

1. JUAN ANTONIO AMAYA-NUNEZ,
2. AZUSENA MARIBEL SIERRA,
3. HECTOR NUNEZ-SANDOVAL,
4. JORGE REYES CRUZ-GARCIA,
6. MICHAEL IAN MILLS,
7. ANNA MARIE REBEKAH DAVIS,
8. JORGE OCTAVIO GARCIA-CALDERON,
9. FNU LNU,
10. FNU LNU,
11. KEVEN ALEXANDER PEREZ,
12. VICTORIANO HINOJOSA,
13. OSCAR MANUEL OLIVEROS,
14. MARIO ALEXIS NUNEZ-RUBIO,
15. LUIS ENRIQUE BARRERA-HERRERA,
16. FNU LNU
17. CHRISTIAN ANTHONY CARVER,
18. ABISAI ESCOBAR FLORES,
19. FNU LNU,
20. NICHO GARCIA,
**21. JESSE CERVANTES,**
22. VICTOR ALONSO CARRERON-ARRANDA, and
23. ADRIANNA RAFAELA HOLGUIN,

　　　Defendants.

---

**ORDER DENYING DEFENDANT JESSE CERVANTES'S MOTION TO SUPPRESS**

---

In the First Superseding Indictment, Defendant Jesse Cervantes is charged with:

(1) one count of conspiracy to distribute and possess with the intent to distribute one or

more of the following controlled substances in violation of 21 U.S.C. § 846: (a) 1

kilogram and more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i); and (b) 100 grams and more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(i); (2) one count of using of a communications device to commit or to cause and facilitate the commission of a felony delineated in Title 21, in violation of 21 U.S.C. §§ 843(b) & (d); (3) one count of traveling in interstate commerce with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of an unlawful activity, in violation of 18 U.S.C. § 1952(a)(3)(A); and (4) one count of distribution and possession with the intent to distribute one kilogram and more of a mixture and substance containing a detectable amount of heroin and aiding and abetting the same, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i) and 18 U.S.C. § 2.  (ECF No. 213.)

Before the Court is Defendant Jesse Cervantes's Motion to Suppress Evidence of Wire and Electronic Communications Occurring To and From Telephone Number 720-676-5224 (Target Telephone 17) ("Motion"), filed on March 11, 2022.  (ECF No. 367.)  The Government responded on April 12, 2022 (ECF No. 377), and Defendant replied on April 25, 2022 (ECF No. 394).

After reviewing the parties' briefs and exhibits, the Court concludes that neither an evidentiary hearing nor a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), is necessary.  For the reasons set forth below, the Motion is denied.

## I.  BACKGROUND

Beginning in September 2019, the Government was investigating an alleged drug

trafficking organization led by co-defendant Azusena Maribel Sierra (the "DTO").  (ECF No. 367 at 2–3; ECF No. 377 at 2.)

In October 2019, United States Drug Enforcement Administration Special Agent Michael Gutke sought wiretaps to intercept and record wire and electronic communications occurring to and from two target phone numbers purportedly belonging to Sierra.  (ECF No. 367 at 2; ECF No. 377 at 2.)  Agent Gutke's wiretap application was supported by an affidavit dated October 9, 2019.  (ECF No. 377-1.)  United States Senior District Judge Robert E. Blackburn granted that application on October 10, 2019. (*Id.* at 64.)

In July 2020, Agent Gutke sought a wiretap to intercept and record wire and electronic communications occurring to and from a cellular telephone assigned telephone number (720) 676-5224, Target Telephone 17 ("TT-17").  (ECF No. 367 at 3.) This phone was allegedly possessed and used by co-defendant Keven Alexander Perez, who the Government contends is a heroin trafficker working for the same source who supplied Sierra.  (ECF No. 367 at 3; ECF No. 377 at 3.)  Agent Gutke's wiretap application was supported by an affidavit dated July 9, 2020.  (ECF No. 377-2.)

In his 121-page [!] affidavit in support of the wiretap on TT-17 (the "Affidavit")[1], Agent Gutke provides background related to the investigation into the DTO and its members (*id.* ¶¶ 21, 23–31, 59–161) and describes the prior wiretaps authorized as part of this investigation (*id.* ¶¶ 22, 32–58).  Based on this investigation, he states that he has probable cause to believe that numerous members and associates of the DTO (including Perez) are engaging in ongoing narcotics transactions in violation with a

---

[1] The Affidavit incorporates by reference the prior affidavits filed in support of 15 other wiretap applications, including TT-1 & TT-2.  (*Id.* ¶ 22.)

number of criminal offenses, including 21 U.S.C. §§ 841(a)(1), 843(b), 846, 848, 952(a),

963, 18 U.S.C. §§ 2, 1952, 1956, 1957, and 31 U.S.C. § 5332.  (ECF No. 277-2 ¶¶ 13–

14, 83–124, 147–51, 352.)  He represents that there is probable cause to believe that

TT-17 is used by Perez and that the initial interception of the wire and electronic

communications sought in TT-17 will disclose admissible evidence of the following:

> (i) discussions concerning the distribution of controlled substances; (ii) dissemination of orders and instructions to subordinates; (iii) discussions of meetings between suppliers and distributors; (iv) discussions relating to the manner and method of payment for narcotics; (v) discussions of the means and methods whereby quantities of controlled substances are to be acquired, the source of the controlled substances, the method of payment, and distribution of profits therefrom; (vi) conversations relating to the administration and management of narcotics operations, identification of its participants, and relationship of the conspiracy with other narcotics operations and the precise nature and scope of illegal activities described herein; (vii) identification of the names and roles of accomplices, aiders and abettors, co-conspirators, and participants in the narcotics distribution conspiracy; (viii) discussions of the means and methods of transportation of controlled substances and the proceeds from the sale of controlled substances across the United States and elsewhere; (ix) identification of other locations and facilities utilized in furtherance of those activities and the distribution of the contraband and money utilized in and obtained by the activities, including the existence and location of records, the location and source of resources used to finance the above described conspiracy, and the location and disposition of proceeds from the above described conspiracy; and (x) admissible evidence of the commission of the offenses described above.

(*Id.* ¶¶ 11, 16.)  Agent Gutke further represents:

> Your affiant is aware that a number of normal and routine investigative techniques are available for drug investigations including (1) conducting standard visual surveillance, (2) using search warrants, (3) using information from confidential sources, (4) introducing undercover officers, (5)

> interviewing subjects and/or potential witnesses, (6) using
> the grand jury, and (6) analyzing pen register data, toll
> records, and trap & trace records.  Your affiant, based on all
> the information gained during the investigation to date,
> believes traditional investigative techniques have been tried
> and have either: (1) failed completely; (2) had limited
> success but failed to achieve the above-defined objectives of
> this investigation; (3) reasonably appear to be unlikely to
> succeed if tried; or (4) are too dangerous to employ.

(*Id.* ¶ 162.)  In the Affidavit, Agent Gutke then described law enforcement's use of each of these traditional techniques (and others), each method's degree success, and an explanation of why techniques utilized to date have not achieved the investigation's objectives.  (*Id.* ¶¶ 163–351.)

Judge Blackburn approved the wiretap on July 10, 2020.  (ECF No. 377-2 at 121.)  Thereafter, on July 18, 2020, pursuant to the wiretap on TT-17, law enforcement intercepted phone calls and communications between Perez and a phone number later identified as belonging to Defendant, in which Defendant allegedly coordinated a drug transaction.  (ECF No. 367 at 3; ECF No. 377 at 3–4.)

## II.  BURDEN OF PROOF

"Generally, if the search or seizure was pursuant to a warrant, the defendant has the burden of [proving that the Government violated the Fourth Amendment]."  *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994) (internal quotation marks omitted).  Defendant offers no argument why the general rule does not apply, nor is the Court aware of one.  Accordingly, Defendant bears the burden here.

## III.  ANALYSIS

In the Motion, Defendant seeks to suppress all evidence of wire and electronic communications to and from telephone number 720-676-5224 (the "Target

Telephone").[2]  (ECF No. 367 at 2.)  He raises both a *Franks* challenge to the affidavit

and a challenge to the necessity justifications contained therein.  The Court considers

each challenge below.

**A.    *Franks* Challenge**

      1.    Legal Standards

The Court's duty

> is to ensure that the magistrate judge had a substantial basis
> for concluding that the affidavit in support of the warrant
> established probable cause.  The task of the issuing
> magistrate is simply to make a practical, common-sense
> decision whether, given all the circumstances set forth in the
> affidavit there is a fair probability that contraband or
> evidence of a crime will be found in a particular place.
>
> Because of the strong preference for searches conducted
> pursuant to a warrant, the Supreme Court has instructed
> [lower courts] to pay great deference to a magistrate judge's
> determination of probable cause.  Only the probability, and
> not a prima facie showing, of criminal activity is the standard

---

[2] Defendant contends that the necessity discussions in the affidavits supporting the wiretaps for TT-1 and TT-2 were "copied and pasted into the Affidavit supporting the Application for Interception of Wire and Electronic Communications for Target Telephone 17, with only the addition of information garnered in the interception of communications on Target Telephone 1 through 15."  (ECF No. 367 at 15.)  He argues that "if the necessity requirements were not satisfied in the Initial Application and Affidavit for Interception of Wire and Electronic Communications for Target Telephones 1 & 2, then the Government's copying and pasting those sections relating to the necessity requirements into the Application and Affidavit for Target Telephone 17, with only adding information garnered from the subsequent wiretaps, the necessity requirement for Target Telephone 17 would not have been satisfied as well."  (*Id.* at 15–16.)  He therefore asks the Court "to find the Application for a wiretap on TT-1 & TT-2 and subsequently TT-17 were insufficient descriptions of necessity and suppress the results of those wiretaps."  (*Id.* at 16.)

However, Defendant suggests that his communications were only intercepted on TT-17.  (*Id.* at 3.)  He does not explain how he has standing to challenge the wiretap applications for TT-1 & TT-2 given that he does not have communications that were captured pursuant to those wiretaps.  (*Id.*)  Accordingly, because Defendant only has standing to challenge TT-17, the Court will limit its analysis to TT-17 and will cite the relevant portions from the TT-17 rather than TT-1 & TT-2.  Nonetheless, because TT-17 incorporates by reference TT-1 & TT-2 (*see* ECF No. 377-2 ¶ 22), the Court has thoroughly considered the sufficiency of these applications as well.

> of probable cause.  The test is whether the facts presented
> in the affidavit would warrant a [person] of reasonable
> caution to believe that evidence of a crime will be found at
> the place to be searched.

*United States v. Nolan*, 199 F.3d 1180, 1182–83 (10th Cir. 1999) (internal quotation

marks and citations omitted; some alterations incorporated).  "The Fourth Amendment

requires probable cause to persist from the issuance of a search warrant to its

execution."  *United States v. Dalton*, 918 F.3d 1117, 1127 (10th Cir. 2019).  In the event

that probable cause ceases to exist after a warrant is issued, "the warrant will no longer

directly support the ensuing search."  *Id.*

A defendant who wishes a reviewing court to consider evidence outside what the

warrant-issuing court considered must bring a *Franks* challenge, named for *Franks v.*

*Delaware*, 438 U.S. 154 (1978).  *Franks* held that a defendant may be entitled to a

preliminary evidentiary hearing to challenge the truthfulness of statements in an affidavit

sworn in support of a warrant.  *Id*. at 155–56.  To obtain a *Franks* hearing, the

defendant must make "a substantial preliminary showing that a false statement

knowingly and intentionally, or with reckless disregard for the truth, was included by the

affiant in the warrant affidavit."  *Id*. at 155–56; *see also United States v. Owens*, 882

F.2d 1493, 1499 (10th Cir. 1989) ("It is not enough to show . . . that an affiant's

negligence or innocent mistake resulted in false statements in the affidavit.").  The

defendant must also make a substantial preliminary showing that "the affidavit, purged

of its falsities, would not be sufficient to support a finding of probable cause."  *United*

*States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997).

To demonstrate recklessness, evidence must exist that the officer "entertained

serious doubts as to the truth of his allegations . . . and [a] reasonable factfinder may

infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Beard v. City of Northglenn, Colo.*, 24 F.3d 110, 116 (10th Cir. 1994). "[T]he standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods." *Id*. (internal quotation marks omitted).

The Court's task, whether on the face of the pleadings or on the facts as established after a *Franks* hearing, is to reconstruct the warrant as it should have been and then decide whether probable cause existed:

> If an arrest warrant affidavit contains false statements, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit. Where information has been omitted from an affidavit, we determine the existence of probable cause by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.

*Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (internal quotation marks and citation omitted). If a district court determines the opponent of the search warrant has proven his case by a preponderance of evidence at the hearing, then the district court must suppress the evidence obtained pursuant to the warrant. *United States v. McKissick*, 204 F.3d 1282, 1297 (10th Cir. 2000).

2.     <u>Analysis</u>

Defendant argues that the Affidavit contains deliberate falsehoods or a reckless disregard for the truth. (ECF No. 394 at 3–4.) He notes that Agent Gutke represented that Sierra is residing in an unknown apartment at the Elevate Apartment Complex located at 7320 S. Havana Street in Englewood, Colorado. (ECF No. 367 at 7; ECF No. 377-2 ¶ 313.) However, he points out that Agent Gutke also stated in his Affidavit that

he observed Sierra "standing on the exterior balcony located on the top floor of the complex's southeastern corner talking on the telephone."  (ECF No. 367 at 7; ECF No. 377-2 ¶ 213.)  Based on the latter representation, Defendant argues "the affiant clearly knows, prior to the Application for Interception of Wire and Electronic Communications, which apartment SIERRA occupies . . . ."  (*Id.*; *see also* ECF No. 394 at 4 ("[T]he affiant clearly shows that prior to the filing of the affidavit, he already ascertained the address and with absolutely minimal effort and without use of interception of wire and electronic communications, the exact apartment number to SIERRA's current residence.").)  He therefore submits that "the affiant's necessity justification in this instance was done with disregard for the truth and therefore was misleading to the Court."  (ECF No. 394 at 3.)

However, the fact that law enforcement observed Sierra standing on a balcony in the apartment complex does not necessarily mean that it knows the *specific* unit in which she resides.  Moreover, the fact that Agent Gutke included his observations of Sierra on the balcony in the Affidavit submitted to Judge Blackburn severely undercuts any inference that Agent Gutke intended to mislead the Court.  (*See, e.g.*, ECF No. 377-2 ¶ 163 ("Your affiant, using electronic and physical surveillance, believes SIERRA is currently residing in an apartment at the Elevate Apartment Complex, located at 7320 S. Havana Street, Englewood, Colorado."); *id.* ¶ 213 ("Between 11:32 and 11:45 a.m., your affiant saw SIERRA standing on the exterior balcony located on the top floor of the complex's southeastern corner talking on the telephone."); *id.* ¶ 313 ("Your affiant has not identified SIERRA's specific apartment within the complex.").)

Aside from his bare speculation that the challenged statements were made with a disregard for the truth, Defendant provides no evidence demonstrating the falsity or

misleading nature of the Affidavit.  Accordingly, because Defendant has failed to make a preliminary showing that the wiretap application contained deliberate or recklessly false information or material omissions, the Court finds no *Franks* hearing is necessary.  *See Franks*, 438 U.S. at 155–56.  This portion of the Motion is therefore denied.

**B.    Sufficiency of the Wiretap Affidavit**

1.    Legal Standards

i.    *General Standards*

Federal investigatory wiretaps are governed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–22.  § 2518 sets forth the requirements for the issuance of a wiretap warrant.  Evidence obtained from a wiretap must be suppressed "if the disclosure of that information would be in violation of [the wiretap statutes]."  *Id.* § 2515.  Aggrieved persons may move to suppress such evidence when "the communication was unlawfully intercepted" or "the order of authorization or approval under which [the communication] was intercepted is insufficient on its face."  *Id.* §§ 2518(10)(a)(i), (ii).

Wiretap authorization orders are presumed proper, and a defendant bears the burden of overcoming this presumption.  *United States v. Mitchell*, 274 F.3d 1307, 1310 (10th Cir. 2001).  Thus, a defendant must present a *prima facie* showing that the government failed to satisfy the requirements of 18 U.S.C. § 2518, which governs wiretap authorizations, and that the orders authorizing the taps were illegal.  *United States v. Borrayo-Gutierrez*, 119 F. Supp. 2d 1168, 1170 (D. Colo. 2000).  Moreover, not every failure to comply with Title III's requirements renders the interception of wire or oral communications unlawful.  *United States v. Carrillo*, 123 F. Supp. 2d 1223, 1231

(D. Colo. 2000), *aff'd sub nom. United States v. Hinojosa Gonzalez*, 68 F. App'x 918 (10th Cir. 2003). ɪA defendant must not only demonstrate a deviation from the requirements of the wiretap statute, but this deviation must be substantial.  *Id.*

The judge to whom the application for a wiretap is submitted has considerable discretion to grant or deny the application.  *Id.*  However, a district court examines *de novo* whether a full and complete statement was submitted to the issuing judge and reviews for an abuse of discretion the issuing judge's conclusion that the wiretaps were necessary.  *United States v. Ramirez-Encarnacíon*, 291 F.3d 1219, 1222 n.1 (10th Cir. 2002).

            ii.    *The Necessity Requirement*

The only wiretap requirement at issue in the instant Motion mandates that the Government submit a written application to the issuing judge setting forth, among other things, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or be too dangerous."  18 U.S.C. § 2518(1)(c).  This provision is called the "necessity requirement."  *United States v. Verdin-Garcia*, 516 F.3d 884, 889–90 (10th Cir. 2008) (citing *United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999)). "The purpose of this requirement is to ensure that the relatively intrusive device of wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime."  *Id*. (citation omitted).  Traditional investigative techniques generally include:  (1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of

conspiratorial groups by undercover agents or informants; and (5) the use of pen registers and trap-and-trace devices.  *Id.* at 890; *see also Ramirez-Encarnacíon*, 291 F.3d at 1222 n.2.

"Although the necessity requirement is intended to ensure that wiretaps are not used in situations where traditional investigative techniques may achieve law enforcement purposes," courts do not require investigating officers to "exhaust all other conceivable investigative procedures before resorting to wiretapping."  *United States v. Foy*, 641 F.3d 455, 464 (10th Cir. 2011) (quoting *United States v. Zapata*, 546 F.3d 1179, 1185–86 (10th Cir. 2008)).

The necessity requirement is not to be treated hypertechnically and does not mandate exhaustion of all possibilities.  *Verdin-Garcia*, 516 F.3d at 890.  It is "met if the government demonstrates either [that] normal investigatory techniques have been tried and failed or that they 'reasonably appear to be unlikely to succeed if tried, or to be too dangerous to try.'"  *Id.* (quoting *United States v. Ramirez*, 479 F.3d 1229, 1240 (10th Cir. 2007)).  The government is expected to act "in a common sense fashion," and on review federal district courts consider "all the facts and circumstances in order to determine whether the government's showing of necessity is sufficient to justify a wiretap."  *Ramirez-Encarnacion*, 291 F.3d at 1222 (internal quotation marks omitted).

2.    Analysis

In this case, Defendant argues that the wiretap on TT-17 should not have been authorized because the Affidavit underlying the wiretap fails to meet the necessity requirement.  (ECF No. 367 at 6.)  He contends that Agent Gutke made "blanket and non-specific statements about the limitations of [standard investigative techniques]

which would be true in every distribution investigation" but failed to describe the limitations with specificity as to this case.  (*Id.*)  He challenges the purported inadequacy of other law enforcement techniques described in the Affidavit, including camera surveillance, GPS surveillance, physical surveillance, financial investigations, trash runs, questioning grand jury witnesses, execution of search warrants, use of confidential witnesses and/or undercover agents, pen registers and trap & trace data.  (*Id.* at 6–16.)

The Government responds that a four-corner's analysis of the necessity statements in the Affidavit demonstrate that Judge Blackburn did not abuse his discretion in determining necessity for the wiretap existed and that his determination was not "arbitrary, capricious or whimsical."  (ECF No. 377 at 8–17.)  To the contrary, the Government argues that the Affidavit meets all the statutory requirements set forth in § 2518(1)(c) because it "addressed the use of traditional investigative techniques, explained the techniques tried, why those techniques were only partially successful and why certain techniques were too dangerous to try."  (*Id.*)  The Court agrees with the Government.

To be sure, the affidavit demonstrates that traditional investigative techniques and prior wiretaps had been successful to a certain degree, especially with respect to building a case against Sierra.  (ECF No. 377-2 ¶¶ 59–161.)  However, "[t]he mere attainment of some degree of success during law enforcement's use of traditional investigative methods does not alone serve to extinguish the need for a wiretap." *Carrillo*, 123 F. Supp. 2d at 1234 (quoting *United States v. Bennett*, 219 F.3d 1117, 1122 (9th Cir. 2000)).  "Necessity will still exist even where traditional investigative procedures can lead to the successful development of evidence against some, but not

all, members of a narcotics conspiracy." *Id.*; *see also United States v. Mesa-Rincon*, 911 F.2d 1433, 1443–44 (10th Cir. 1990) (recognizing the Tenth Circuit "has previously used the identification of all of the members of a conspiracy, learning the precise nature and scope of the illegal activity, the apprehension of accomplices, and the determination of the dimensions of an extensive conspiracy as sufficient justification for the use of electronic surveillance"); *United States v. Johnson*, 645 F.2d 865, 867 (10th Cir. 1981) (recognizing that even where law enforcement has established one individual's involvement in a conspiracy, the "apprehension of so-called 'satellites' involved in the distribution scheme and the determination of the dimensions of an extensive drug conspiracy have been held to justify the use of electronic surveillance").

Moreover, to the extent Defendant argues that Agent Gutke impermissibly relied on boilerplate assertions and conclusions from earlier applications and affidavits (ECF No. 367 at 6, 15–16), the Court disagrees.  The fact that similar necessity justifications may exist in other narcotics investigations and for prior wiretap applications within the same investigation does not render the justifications in the Affidavit any less meritorious.

After thoroughly reviewed the Affidavit and the parties' arguments regarding Agent Gutke's necessity statements, the Court cannot conclude that Judge Blackburn abused his discretion in determining that the Affidavit meets the statutory requirements set forth in § 2518(1)(c).  Accordingly, this portion of the Motion is denied.

## IV.  CONCLUSION

For the reasons set forth above, Defendant Jesse Cervantes's Motion to Suppress Evidence of Wire and Electronic Communications Occurring To and From Telephone Number 720-676-5224 (Target Telephone 17) (ECF No. 367) is DENIED.

Dated this 5th day of May, 2022.

BY THE COURT:

_____

William J. Martínez
United States District Judge