**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 20-cr-292-WJM-21

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**21.   JESSE CERVANTES,**

     Defendant.

---

**ORDER DENYING DEFENDANT JESSE CERVANTES'S**
**MOTION TO DISMISS SUPERSEDING INDICTMENT FOR VIOLATION**
**OF THE SPEEDY TRIAL ACT AND RESETTING TRIAL DATE**

---

Defendant Jesse Cervantes is charged in the Superseding Indictment with one count of conspiracy to distribute and possess with the intent to distribute heroin; one count of knowingly and intentionally using a telephone in causing and facilitating the conspiracy; one count of traveling in interstate commerce with the intent to promote manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of the conspiracy; and one count of possession with intent to distribute one kilogram and more of a mixture and substance containing a detectable amount of heroin.  (ECF No. 213.)  Defendant is charged in the 43-count Superseding Indictment alongside 22 codefendants.  (*Id.*)

On September 7, 2022, the Court, *sua sponte*, directed counsel for Defendant and the Government to file a Joint Notice "provid[ing] the Court with the parties' calculations of Defendant Cervantes's speedy trial date as of the date of the filing of the

Joint Notice." (ECF No. 458.)  The Joint Notice, filed on September 12, 2022, revealed the parties substantial disagreement on the proper method for calculating Defendant's speedy trial clock.  (ECF No. 463.)  Critically, the parties agreed that either the Government's calculation is correct and the speedy trial clock will not expire until well into 2023, or Defendant's calculation is correct and a speedy trial violation has long since occurred.  (*Id.* at 9.)  In light of the Joint Notice, the Court directed Defendant to file a motion to dismiss and set a full briefing schedule.  (ECF No. 493.)

Now before the Court is Defendant's Motion to Dismiss Superseding Indictment for Violation of the Speedy Trial Act ("Motion").  (ECF No. 497.)  The Government filed its response on October 17, 2022 (ECF No. 508), and Defendant filed his reply on October 23, 2022 (ECF No. 516).  For the reasons explained below, the Motion is denied.

## I. BACKGROUND

The original indictment in this case was filed on September 3, 2020, and an arrest warrant was issued the same day.  (ECF No. 497 at 1–2.)  Defendant was arrested on October 1, 2020, in the Eastern District of California.  (*Id.* at 2.)  Defendant was ordered detained and remanded to the custody of the United States Marshal for transportation to the District of Colorado.  (*Id.*)  Defendant made his initial appearance in this district on January 26, 2021.  (*Id.* at 2–3.)  On February 3, 2021 the Superseding Indictment, which did not change any of the counts or allegations relating to Defendant, was filed.  (*Id.* at 3.)  Defendant made his initial appearance on the Superseding Indictment on February 24, 2021.  (*Id.*)

The Court has granted three ends of justice ("EOJ") motions during the pretrial

2

proceedings in this case.  (ECF Nos. 263, 307, 370.)  The parties' methods for

calculating the speedy trial clock differ, and their views on the effect of the EOJ motions

granted by the Court differ as a consequence.  (*Compare* ECF No. 497 at 4 *with* ECF

No. 508 at 5.)  Defendant contends the speedy trial clock expired on June 29, 2022.

(ECF No. 497 at 4.)  The Government argues the speedy trial clock would have expired

on February 15, 2022, except it has been tolled since June 21, 2021.  (ECF No. 508 at

5.)

Starting in June 2021, the many codefendants in this case began reaching

dispositions with the Government.  (*Id.* at 6.)  The codefendants' notices of disposition

("NODs") and change of plea hearings have been filed and held on a rolling basis.  (*See

id.*)  Because of the sheer number of codefendants in this case, from June 21, 2021 to

November 23, 2022, there was always at least one codefendant awaiting a change of

plea hearing after filing an NOD.  (*Id.*)  The period between June 21, 2021, and

November 23, 2022, is 520 days.

## II. LEGAL STANDARDS

### A.    Speedy Trial Act

"The dual purpose of the Speedy Trial Act is to protect a defendant's

constitutional right to a speedy indictment and trial, and to serve the public interest in

bringing prompt criminal proceedings."  *United States v. Saltzman*, 984 F.2d 1087, 1090

(10th Cir. 1993) (quoting *United States v. Noone*, 913 F.2d 20, 28 (1st Cir. 1990)).  The

Speedy Trial Act reads in relevant part:

> In any case in which a plea of not guilty is entered, the trial
> of a defendant charged in an information or indictment with
> the commission of an offense shall commence within
> seventy days from the filing date (and making public) of the

> information or indictment, or from the date the defendant has
> appeared before a judicial officer of the court in which such
> charge is pending, whichever date last occurs.  If a
> defendant consents in writing to be tried before a magistrate
> judge on a complaint, the trial shall commence within
> seventy days from the date of such consent.

18 U.S.C. § 3161(c)(1).

The Speedy Trial Act provides that certain periods of delay are not included in computing the time limits for trial.  *Id.* at § 3161(h)(1)–(8).  Three categories of exclusions under the Speedy Trial Act are relevant in this case: delays attributable to pretrial motions, delays attributable to the consideration by the court of a proposed plea deal, delays attributable to codefendants, and ends of justice continuances.

First, 18 U.S.C. § 3161(h)(1)(D) provides for the exclusion of periods of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  Additionally, § 3161(h)(1)(H) excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."

The United States Court of Appeals for the Tenth Circuit has "explained that these subsections work in concert such that 'if a motion is one that does not require a hearing, the Act excludes time through the period of its prompt disposition, but only if that period does not exceed thirty days from the date the motion is taken under advisement.'"  *United States v. Margheim*, 770 F.3d 1312, 1318 (10th Cir. 2014) (quoting *United States v. Williams*, 511 F.3d 1044, 1048 (10th Cir. 2007)).  In other words, "[*i*]*f under advisement,* the maximum excludable delay for the court's determination is 30 days."  *Id.* at 1322 (quoting *United States v. Willie,* 941 F.2d 1384,

1387 (10th Cir. 1991) (emphasis in original)).

In *Henderson v. United States*, 476 U.S. 321, 331 (1986), the Supreme Court instructed that "[t]he provisions of the Act are designed to exclude all time that is consumed in placing the trial court in a position to dispose of a motion." The Supreme Court defined "under advisement" to begin at "the time the court receives all the papers it reasonably expects." *Id.* at 329. In *Margheim*, the Tenth Circuit stated that it has interpreted *Henderson*'s holding to mean that if the district court seeks "more information upon which to make its ruling" on a motion, the advisement period does not begin "[u]ntil the court obtains that information." *Margheim*, 770 F.3d at 1322 (quoting *Willie*, 941 F.2d at 1388 n.2).

Second, § 3161(h)(1)(G) excludes "delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government."

Third, time is excluded for a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6).

Fourth, time is excludable for

> [a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such

5

> continuance outweigh the best interests of the public and the defendant in a speedy trial.

*Id.* at § 3161(h)(7)(A).

"When a defendant demonstrates a violation of the Act, the proper remedy is dismissal of the indictment."  *Margheim*, 770 F.3d at 1318 (citing 18 U.S.C. § 3162(a)(2)).  "[T]he district court retains broad discretion whether to dismiss the indictment with or without prejudice."  *Id.* (quoting *United States v. Abdush-Shakur*, 465 F.3d 458, 462 (10th Cir. 2006)).

## B.      Sixth Amendment Speedy Trial Right

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  *United States v. Seltzer*, 595 F.3d 1170, 1175 (10th Cir. 2010).  The remedy for violating this right is dismissal of the indictment. *See id.*  "[I]t is the prosecution's burden (and ultimately the court's) and not the defendant's responsibility to assure that cases are brought to trial in a timely manner." *Id.* at 1175–76.

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court enumerated four factors to consider in the Sixth Amendment speedy trial analysis: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant.  *Id.* at 530.  "[T]hese factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."  *Id.* at 533.  But the Court need not go further than the first factor if the delay was not "presumptively prejudicial."  *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay.")

6

(internal quotation marks omitted); *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006) ("The remaining factors are examined only if the delay is long enough to be presumptively prejudicial.").

The Tenth Circuit has stated that "delays approaching one year are presumptively prejudicial," *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010), but also that eleven months is not presumptively prejudicial, *Abdush-Shakur*, 465 F.3d at 465 ("[T]he parties disagree as to whether the relevant period of delay under consideration was eleven or fourteen months. The latter delay, but not the former, might qualify as presumptively prejudicial.").  The Tenth Circuit has also characterized "a year" as the "bare minimum" of presumptive prejudice.  *Margheim*, 770 F.3d at 1326.

### III. ANALYSIS

#### A.  Speedy Trial Act

##### 1.  Days are Excludable Based on Codefendants' Notices of Disposition

As alluded to above, the core of the parties' dispute is whether a defendant's speedy trial clock is tolled from the time a properly joined codefendant files an NOD to the conclusion of the resulting change of plea hearing.

Defendant argues that a close reading of the Speedy Trial Act's text reveals the Government's reading of 18 U.S.C. § 3161(h)(1) is not supported by its language.  First, Defendant explains that if any subsection applies to his codefendants' dispositions, it is § 3161(h)(1)(G).  (ECF No. 497 at 13–14.)  He argues that § 3161(h)(1)(D) is inapplicable because "it is fairly clear this is referring to motions of substantive matters to the trial."  (*Id.* at 14.)  In contrast, an NOD is "just that"—a notice and not a motion. (*Id.*)  Next, he draws out a subtle distinction between § 3161(h)(1)(G) and §§

7

3161(h)(1)(E) and (F).  While subsections (E) and (F) expressly exclude delays resulting from the transfer or transportation of "any" defendant, subsection (G) excludes "delay resulting from consideration by the court of a proposed plea agreement to be entered into by *the* defendant and the attorney for the Government."  (*See id.* at 13–14 (quoting §§ 3161(h)(1)(D), (E), (F)) (emphasis in original).)  Though subtle, this is precisely the kind of distinction courts have found critical in interpreting statutory text.  *See Murphy v. Smith*, 138 S. Ct. 784, 787 (2018) (noting that, in statutory text, "may" implies discretion, while "shall" normally creates an obligation).  Therefore, Defendant argues his codefendants' NODs cannot save the Government from its neglect in timely bringing him to trial.

The Government responds by citing two out-of-circuit cases "where the court found proceedings involving changes of plea by codefendants tolled speedy trial time as to a non-pleading defendant."  (ECF No. 508 at 5 (citing *United States v. Santiago-Becerril*, 130 F.3d 11, 20 (1st Cir. 1997) and *United States v. Jenkins*, 92 F.3d 430, 439 (6th Cir. 1996).)  The Government asserts that under these cases, tolling under § 3161(h)(1)(G) "applies to all defendants in a case[,] since the time limits to all codefendants are tolled under the subsection and the time limits of all codefendants apply to others unless there is a severance under § 3161(h)(6)."[1]

In his reply, Defendant argues that even if § 3161(h)(1)(G) tolls speedy trial for non-pleading codefendants, the amount of excludable time is limited to 30 days under § 3161(h)(1)(H).  (ECF No. 516 at 3.)  Further, he contends that "any Notice of Disposition

---

[1] This is the Government's clearest articulation of which subsection of § 3161(h)(1) excludes time based on codefendants' NODs.  The Government does, however, imply that it understands *Santiago-Becerril* as holding this time excludable under subsection (D) as well. (ECF No. 508 at 5.)

filed by a co-defendant during an already existing exclusion of time . . . is subsumed into the existing exclusion and no additional time gets 'tacked' on after the pre-existing exclusion." (*Id.*)  Such tacking on, he argues, would result in unfair "double counting." (*Id.*)

Neither party gets the operation of these provisions quite right.  The Court, having done its own research into this matter, appreciates that there is no Tenth Circuit case that answers this question directly.  *Santiago-Becerril*, though out-of-circuit and 25 years old, is directly on point (though a less extreme example than this 23-defendant case).  Even so, the Court believes the Motion can be resolved on Tenth Circuit law as laid out below.

Contrary to Defendant's assertion, for purposes of the Speedy Trial Act, "a 'defendant's request to change his plea clearly constitutes a pretrial motion, a motion which automatically triggers an exclusion of time.'"  *United States v. Loughrin*, 710 F.3d 1111, 1120 (10th Cir. 2013).  This is because the "focus" of § 3161(h)(1)(D) "is whether the court's intervention is required or whether a hearing must be held," *id.* (quoting *Santiago-Becerril*, 130 F.3d at 20) (internal quotation marks omitted), not whether the motion is "substantive."  (ECF No. 497 at 14.)  Therefore, even if Defendant's statutory interpretation argument regarding the applicability of § 3161(h)(1)(G) is correct, because an NOD is a motion for purposes of § 3161(h)(1)(D), "the days between a notice of a change of plea and the change-of-plea hearing are excludable" under the Speedy Trial Act.  *Loughrin*, 710 F.3d at 1120.

Also contrary to Defendant's argument, § 3161(h)(1)(H) does not impose a 30-day limit on the automatic exclusion initiated by an NOD.  Long ago the Supreme Court

explained that § 3161(h)(1)(D) "excludes time in two situations."  *Henderson*, 476 U.S. at 329.  Implicit in Defendant's argument is an assertion that NODs fall into "motions that require no hearing and that result in a 'prompt disposition'"; however, "[i]t is obvious that a change of plea triggers judicial action and even though it may not require formal briefing[,] it will require a hearing addressing the merits with the defendant's participation."  *Id.*; *Loughrin*, 710 F.3d at 1120.  "[W]hen a pretrial motion requires a hearing: subsection ([D]) on its face excludes the entire period between the filing of the motion and the conclusion of the hearing."  *Henderson*, 476 U.S. at 329

*Loughrin*, unlike *Santiago-Becerril*, does not address the effect of a codefendant's NOD on a non-pleading defendant's speedy trial clock.  Section 3161(h)(6) excludes a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."  18 U.S.C. § 3161(h)(6).  Not only has no motion for severance been granted as to Defendant, but he has not even filed such a motion. Therefore, the Court concludes that time excludable due to the codefendants' NODs are excludable as to Defendant, so long as the resulting delay is "reasonable."  18 U.S.C. § 3161(h)(6).

2.    Delay Attributable to Codefendants Is Reasonable

In determining whether delay attributable to a codefendant is reasonable, a court must examine all relevant circumstances.  The Tenth Circuit has articulated three factors, known as the "*Vogl* factors," to guide district courts in this exercise: "(1) whether the defendant is free on bond, (2) whether the defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to

10

'accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial.'"  *Margheim*, 770 F.3d at 1319 (quoting *United States v. Vogl*, 374 F.3d 976, 984 (10th Cir. 2004)).

Defendant argues that applying his codefendants' exclusion periods to his own Speedy Trial Act calculations would be unreasonable.  (ECF No. 497 at 15–17.)  With respect to the first factor, Defendant notes that he is not free on bond and, consequently, "his liberty interests have been greatly affected."  (*Id.* at 16.)  With respect to the second factor, Defendant concedes that "it could be argued he has not zealously pursued his speedy trial rights" but emphasizes that "he cannot lose, or waive, this constitutional right by not zealously pursuing it."  (*Id.*)  With respect to the third and final factor, Defendant notes that a trial involving all 23 codefendants "would have required lengthy recitation of the factual history, a multitude of witnesses to address the facts and circumstances involved with each different defendant[,] and a wide array of evidence supporting the allegations a[s] to each individual defendant."  (*Id.* at 17.)

The Court finds the *Vogl* factors weigh in favor of the Government's position that any delay attributable to his codefendants is reasonably applied to Defendant's Speedy Trial Act calculations.  The Court agrees with Defendant that the first factor favors him, as he is currently detained awaiting trial.  (*Id.* at 16.)

The Tenth Circuit instructs that the second factor, zealous pursuit of speedy trial rights, "requires a close look at whether a defendant sought a severance from codefendants or filed motions for continuances or dismissal during the challenged time period."  *Id.* (citing *United States v. Tranakos*, 911 F.2d 1422, 1426 (10th Cir. 1990)).  This factor weighs in the Government's favor.  Defendant has never sought a severance

from his codefendants, either to avoid delay in proceeding to trial or for any other reason.[2]  *See Margheim*, 770 F.3d at 1320 ("Critically, at no point did Mr. Margheim move for a severance—and this, in our view (when considered in the context of his other pretrial conduct), fatally undercuts Mr. Margheim's argument."); *Tranakos*, 911 F.2d at 1426 (chiding defendant who "never sought a severance from the other defendants"); *United States v. Theron*, 782 F.2d 1510, 1512 (10th Cir. 1986) (noting as favorable to the defendant's cause the fact that he "moved for a severance and an immediate trial, did not join any of his codefendants' motions, and was willing to be tried immediately even if it meant waiving certain rights"); *United States v. Vasquez*, 918 F.2d 329, 336–37 (2d Cir. 1990) (preventing codefendants from arguing unreasonable delay when neither moved to sever in a timely manner).  In addition, Defendant filed a motion to suppress (ECF No. 367) and either joined or did not oppose multiple EOJ motions filed by codefendants during the relevant timeframe (ECF Nos. 306, 365.)

Finally, the Court examines the third *Vogl* factor—effective use of resources. "When examining the relevant circumstances, [the Tenth Circuit] consider[s] . . . the obvious purpose behind the exclusion; that is, to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial."

---

[2] Defense counsel provides the following explanation for why no motion to sever was filed in this case:

> Historically, counsel has observed that a Motion for Severance from codefendants is so rarely granted as to be a waste of defense resources. It has been observed that only when two codefendants are offering mutually conflicting defenses will a Motion for Severance succeed. As there was not such a situation in the instant case, Mr. Cervantes has not sought a severance from his codefendants.

(ECF No. 497 at 15.)

*Margheim*, 770 F.3d at 1320 (internal quotation marks and citation omitted).  The Tenth

Circuit teaches that "[a] single trial is ideal when the government plans to 'recite a single

factual history, put on a single array of evidence, and call a single group of witnesses.'"

*Id.* (quoting *Vogl*, 374 F.3d at 984).  The inquiry associated with this aspect of the

analysis is highly fact sensitive.  *See id.*

This is a conspiracy case and, whether in one trial or several, the Government

cannot put on its case without evidence of the conduct of multiple people.  The lengthy

factual history, multiple witnesses, and evidence concerning multiple individuals

required for this case cuts in favor of a single trial because, even if some of this

background evidence can be omitted now that so many codefendants have filed NODs,

much of this evidence would have to be repeated in seriatim trials.  This would require

the commitment of enormous judicial and prosecutorial resources.  And while it is true

that Defendant currently stands as the only defendant seeking a trial, the Court cannot

"rule definitively on whether or not to accept" changes of plea from codefendants

currently awaiting hearings.  *Loughrin*, 710 F.3d at 1120 (quoting *Santiago-Becerril*, 130

F.3d at 21).  One or more of those codefendants could renege, or one or more of the

several codefendants who are currently fugitives could be arrested.  Therefore, it is

entirely possible that Defendant will be tried alongside one or more of his codefendants.

Given the foregoing, the Court finds that on balance, delay attributable to

codefendants' NODs is reasonable.

3.     Speedy Trial Calculation

On November 3, 2021, prior to Defendant's initial appearance in this district, the

Government moved to designate this case as complex and for a 120-day EOJ exclusion

from the speedy trial clock.  (ECF No. 176.)  The undersigned granted that motion on November 10, 2021.  (ECF No. 179.)  At that time, the codefendant with the latest speedy trial expiration date was January 7, 2021.  (ECF No. 168.)  This Court's November 10, 2021, Order reset the expiration date to May 14, 2021.[3]  Therefore, though Defendants speedy trial expiration date was set at April 8, 2021 (ECF No. 212), following his initial appearance, his speedy trial clock had already been extended.

On April 7, 2021, a motion seeking a 180-day EOJ exclusion was filed (ECF No. 253), which the undersigned granted on April 16, 2021.  (ECF No. 263).  This Court's April 16, 2021, Order reset the speedy trial expiration date to November 19, 2021.[4]

On June 21, 2021, the first two NODs were filed by codefendants.  (ECF Nos. 280, 282.)  From that date until November 23, 2022, there was always at least one codefendant who had entered an NOD and was awaiting a change of plea hearing. (*See* ECF No. 508 at 6.)  Based on the analysis in Sections III.A.1 and III.A.2, *supra*, these days are automatically excluded.  The latest-scheduled codefendant change of plea hearing was held on November 23, 2022.  (ECF No. 566.)  These exclusions extend the speedy trial expiration date April 23, 2023.

Since June 21, 2021, two additional EOJ motions have been filed and granted, each seeking 90-day exclusions.  (ECF Nos. 306, 307, 365, 370.)  Defendant urges that these exclusions be ignored due to their overlap with the tolling period created by the NODs.  (ECF No. 516 at 3.)  In his view, a contrary approach results in "double counting

---

[3] A total of 127 days is excluded based on the seven days the motion to declare complex was under advisement and the 120-day EOJ exclusion.

[4] A total of 189 days is excluded based on the nine days the EOJ motion was under advisement and the 180-day EOJ exclusion.

for tolling purposes." (*Id.*)  Curiously, the Government's position appears to be that, while both EOJ motions were made while the speedy trial clock was already tolled, one Order should be given effect and one should not.  (*See* ECF No. 508 at 6–8.)  While the Court readily accepts that the same day cannot be tolled twice based on more than one pending motion (*Id.* at 7 n.1 ("None of the notice of disposition tolling analysis above considers Mr. Cervantes'[s] motion to suppress . . . [the] days [during which is was under consideration] fall within the notice of disposition tolling periods.")), it will not render its own Orders a nullity.

On October 29, 2021, a motion seeking a 90-day EOJ exclusion was filed (ECF No. 306), which the undersigned granted on November 1, 2022.  (ECF No. 307.)  This Court's November 1, 2021, Order thus resets the speedy trial expiration date to July 24, 2023.[5]

On March 10, 2022, a motion seeking a 90-day EOJ exclusion was filed (ECF No. 365), which the undersigned granted on March 15, 2022.  (ECF No. 370.)  This Court's March 15, 2022, Order had the effect of resetting the speedy trial expiration date to October 26, 2023.[6]

Therefore, the Court concludes Defendant has not suffered a Speedy Trial Act violation.

---

[5] A total of 92 days is excluded based on the two days the EOJ motion was under advisement and the 90-day EOJ exclusion.

[6] A total of 94 days is excluded based on the four days the EOJ motion was under advisement and the 90-day EOJ exclusion.

**B.     Sixth Amendment Speedy Trial Right**

1.     Length of the Delay

Delay is measured from "when the defendant is arrested or indicted, whichever

comes first." *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004).  Defendant was

indicted on September 3, 2020.  (ECF No. 1.)  More than two years have passed since

that time.  The delay is therefore presumptively prejudicial, and the Court must go on to

examine the remaining three factors.  *See Larson*, 627 F.3d at 1208.

2.     Reason for the Delay

"The second *Barker* factor—the reason for delay—is the flag all litigants seek to

capture." *Margheim*, 770 F.3d at 1326 (quoting *United States v. Loud Hawk*, 474 U.S.

302, 315 (1986)).  In evaluating this factor, the Court "must assess the reasons offered

by the government for not bringing the defendant to trial in a timely fashion." *Id.*  "When

neither the prosecution nor the defendant is to blame, the delay can still favor one side

or the other." *Muhtorov*, 20 F.4th at 640.

"The reason for a delay weighs against the government in proportion to the

degree to which the government caused the delay. . . .  [C]ontinuances and other

motions filed by the defendant do not weigh against the government." *United States v.*

*Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006); *United States v. Banks*, 761 F.3d 1163,

1183 (10th Cir. 2014) (finding the defendants caused the delay where they filed

"multiple continuances with the district court and argued that they would be prejudiced if

the court refused to grant them").  "Purposeful delay or delay to gain advantage weighs

heavily against the government, while '[a] more neutral reason such as negligence or

overcrowded courts [is] weighted less heavily.'" *United States v. Gould*, 672 F.3d 930,

937 (10th Cir. 2012) (alterations in original) (quoting *Barker*, 407 U.S. at 531).

Defendant blends his Speedy Trial Act and Sixth Amendment arguments. Though he uses *Barker* to frame his analysis on the reason for the delay in this case, his entire argument focuses on the statutory interpretation analysis discussed above. (ECF No. 497 at 12–14.)  Nevertheless, it is the Government's burden to "bring[] a case to trial in a timely fashion absent justification." *Muhtorov*, 20 F.4th at 639.  In the Government's view, like in *Muhtorov*, the delay in this case is primarily due to the lengthy discovery process in a case with more than twenty codefendants.  (ECF No. 508 at 9.)  The Government concedes, however, that two periods of delay, each 112-days,[7] "while not attributable to any nefarious motive . . . , do weigh against the government in the constitutional analysis."  (*Id.* at 10.)

The Tenth Circuit has observed that some cases "demand[] more flexible treatment." *United States v. Toombs*, 574 F.3d 1262, 1269 (10th Cir. 2009).  Among them are cases such as this, where an expansive, complex, multi-defendant conspiracy is charged in a single indictment. *See Margheim*, 770 F.3d 1312 (noting that delays to ensure complete discovery and allow time for motion practice was expected in 31-defendant conspiracy case).  Some of the delay in this case is attributable to (1) the EOJ motions Defendant joined or did not oppose and (2) Defendant's motion to suppress.  (ECF No. 508 at 10.)  The Court has also found no purposeful delay from either the Government or Defendant; however, the Court agrees with the Government that the two 112-day delays are attributable to it.

_____

[7] These 112-day periods are: (1) the time between when Defendant was ordered to Colorado from California; and (2) the "other non-EOJ days" between June 13, 2022, and when Defendant filed the Motion.

Therefore, the Court finds this factor weighs slightly in favor of Defendant.

3.    Assertion of Desire for Speedy Trial

With regard to the third *Barker* factor—a defendant's assertion of his speedy trial

right—the Tenth Circuit has recognized the following:

> Perhaps most important is whether the defendant has
> actively asserted his right to a speedy trial.  This is not
> satisfied merely by moving to dismiss after the delay has
> already occurred.  Such a motion could be, indeed may well
> be, strategic.  The question, instead, is whether the
> defendant's behavior during the course of litigation evinces a
> desire to go to trial with dispatch.

*Batie*, 433 F.3d at 1291; *Barker*, 407 U.S. at 536 ("[B]arring extraordinary

circumstances, we would be reluctant indeed to rule that a defendant was denied this

constitutional right on a record that strongly indicates, as does this one, that the

defendant did not want a speedy trial.").

There is nothing in the record indicating Defendant's desire to go to trial "with

dispatch."  As previously noted, he has either joined or not opposed multiple EOJ

motions filed by codefendants and has not moved to sever.  Critically, the events

leading to the Motion were initiated by the Court, not Defendant.  It was the Court, *sua*

*sponte*, that directed the parties to file the Joint Notice regarding the status of speedy

trial rights considerations as it pertained to Defendant; and it was the Court that directed

Defendant to file a formal motion to dismiss so that the issue could be properly briefed.

Defendant's conduct certainly evinces a desire to exercise his right, at some point, to a

jury trial, even in the face of every other codefendant currently in custody entering

NODs.  Nonetheless, his conduct prior to the Court's Order directing the parties to file

the Joint Notice regarding the status of Defendant's speedy trial situation also leads the

Court to conclude that Defendant was perfectly content to sit back as the pretrial proceedings unfolded and take no action to seek an earlier trial, even though the sprawling size of the case led to lengthy but entirely predictable delays.

Therefore, the Court finds that this factor weighs heavily in the Government's favor.

> 4.    Prejudice

Defendant bears the burden of showing that he was prejudiced by the delay of his trial. *Larson*, 627 F.3d at 1208–09. Failure to show prejudice caused by the delay is "nearly fatal to a speedy trial claim." *Gould*, 672 F.3d at 939. Generally, a delay is presumptively prejudicial if it is at least six years. *Muhtorov*, 20 F.4th at 653. When a delay is shorter, as is the case here, the defendant must show specific evidence of prejudice. *Id.* The Court must "assess [specific evidence of] prejudice in light of the interests that the speedy trial right was designed to protect," namely, "(i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) minimization of the possibility that the defense will be impaired." *Seltzer*, 595 F.3d 1170, 1179 (10th Cir. 2010). The third factor is "the most serious," followed by the first and then the second. *Id.* at 1179–80.

To support his arguments that the delay has caused him prejudice, Defendant states that he has been subjected to pretrial incarceration in this matter for more than two years. (ECF No. 497 at 17.) Regarding the second factor of anxiety, Defendant states that he has a wife and five kids, and his long incarceration "has caused immeasurable damage to the family dynamics." (*Id.*) The damage to his relationships and impact on his children, in turn, cause him anxiety. (*Id.* at 15–16.) Regarding the

third factor, Defendant states that "[a] witness, who may also be an alternative suspect, has become difficult to find."  (*Id.* at 18.)

In response, the Government argues that "other than describe his incarceration," Defendant "has not alleged any prejudicial impact of the delay of the trial."  (ECF No. 508 at 11.)  It also asserts that when the prejudice of pretrial incarceration is weighed, the Court should only consider the delay that is attributable to the Government.  (*Id.*)  The Government provides no support for this contention, though the Court notes it is perhaps supported by *Muhtorov*.  (*Id.*); 20 F.4th at 653 ("Thus, for purposes of establishing presumptive prejudice, we should consider only the delay attributable to the government, and not the delay attributable to the defendant.") (internal quotations omitted).

Defendant fails to meet his burden to show he was prejudiced by the delay in this case.  He has not identified any legal authority to support his contention that two years of pretrial incarceration is "oppressive" for constitutional purposes.  The Court, however, finds support in *Seltzer*, in which the Tenth Circuit described two years of pretrial incarceration as "prolonged."  595 F.3d at 1181.  The Court finds that Defendant has failed to show specific evidence of prejudice to this interest.

The Court is sympathetic to the fact that Defendant's incarceration impacts his familial relationships, but there is nothing about this that is in any way different from any other person incarcerated pretrial (or post-conviction for that matter).  Because Defendant has not alleged any "special harm" that "distinguishes his case from that of any other arrestee awaiting trial," the Court finds Defendant's anxiety-and-concern argument is not well supported.  *Muhtorov*, 20 F.4th 657–58 (quoting *United States v.*

*Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994)).

Defendant's prejudice argument with respect to impairment of his defense—the "last and most important type of specific prejudice"—is woefully insufficient. *Id.* at 658. The Tenth Circuit requires defendants to "identify lost testimony with particularity" and "explain how the lost testimony was 'material' or 'meaningful.'" *Id.* at 654 (citation omitted). "The defendant must also present evidence that the delay caused the unavailability." *Id.* at 655–56. Defendant's two-sentence argument does neither. (ECF 497 at 18.) Defendant merely states generally and without support that: "The length of time this case has been pending as done some impairment to the defense. A witness, who may also be an alternative suspect, has become difficult to find." (*Id.*) The Court finds Defendant has not shown any evidence of prejudice to this specific interest.

Considering all of the types of specific prejudice and the facts set forth by Defendant, the Court concludes that he has suffered no substantial prejudice.

5.   <u>Balancing</u>

"Speedy trial claims require applying a balancing test." *Seltzer*, 595 F.3d at 1181 (quoting *Jackson*, 390 F.3d at 1266). "[T]he right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial." *Id.* (quoting *Dickey v. Florida*, 398 U.S. 30, 38 (1970)). None of these four factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* (quoting *Batie*, 433 F.3d at 1290).

Considering the four *Barker* factors and the circumstances surrounding this case, the Court finds that Defendant's right to a speedy trial under the Sixth Amendment has not been violated. Therefore, the Court denies the Motion to the extent it is separately

based on an alleged Sixth Amendment speedy trial violation.

## IV. CONCLUSION

For the reasons explained above, the Court ORDERS:

1.      Defendant's Motion to Dismiss Superseding Indictment for Violation of the
        Speedy Trial Act (ECF No. 497.)  is DENIED as explained above;

2.      This case remains pending as to this Defendant;

3.      Local Rule D.C.COLO.LCrR 11.1 applies fully to this case.  Absent an
        Order permitting or directing otherwise, a Notice of Disposition shall be
        filed no later than 14 days before the trial date;

4.      Given that the motions deadline in this case lapsed on July 22, 2022, the
        Court WILL NOT accept any additional motions addressing the merits of
        this case;

5.      A Final Trial Preparation Conference is hereby set for **April 12, 2023, at
        3:30 p.m**. in Courtroom A801.  All counsel who will try the case must
        attend in person.  Any outstanding motions may be addressed at the time
        of the Final Trial Preparation Conference;

6.      As required by WJM Revised Practice Standards IX.E, as revised effective
        Dec. 1, 2022:

        a.      Expert witness disclosures pursuant to Fed. R. Crim. P. 16 shall be
                made not later than 14 days prior to the Final Trial Preparation
                Conference, and any challenges to such experts shall be made not
                later than 7 days prior to said Conference; and

        b.      Disclosures regarding rebuttal expert witnesses shall be made not

later than 7 days prior to the Final Trial Preparation Conference, and any challenges to such rebuttal experts shall be made not later than the day prior to said Conference;

7.    A 4-day jury trial is hereby set to commence in the U.S. Courthouse, Courtroom A801, 901 19th Street, Denver, Colorado, **on April 24, 2023, at 8:30 a.m.**; and

8.    Counsel is directed to this Court's Revised Practice Standards, as revised effective Dec. 1, 2022, to ensure compliance with all deadlines triggered by the setting of the Final Trial Preparation Conference and Trial.   In so doing, the parties are strongly encouraged to take advantage of the "Trial Preparation Conference & Pretrial Checklist" available at http://www.cod.uscourts.gov/JudicialOfficers/ActiveArticleIIIJudges/HonWilliamJMartinez.aspx.

Dated this 5th day of December, 2022.

BY THE COURT:

William J. Martinez
United States District Judge